IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARRIE MUMPHREY,                              No   C 07-2725 VRW

       Plaintiff,                             ORDER

       v

MICHAEL J ASTRUE, Commissioner of
Social Security,

       Defendant.
                                      /

       Plaintiff Carrie Mumphrey appeals from the decision of the Social Security Administration ("SSA") denying her social security disability insurance benefits ("DIB") and supplemental security income ("SSI").  The court now considers cross-motions for summary judgment.  Doc # 15, Doc #16.  Because the administrative law judge ("ALJ") correctly determined that the record contains no objective medical findings to support plaintiff's claims of disabling physical and mental limitations, the court GRANTS defendant's motion and DENIES plaintiff's motion.

//

//

**I**

**A**

The record in this case presents an unusually stark contrast between a claimant's subjective complaints and the medical signs and laboratory findings.

Plaintiff was born on November 26, 1980. Administrative Record ("AR") (Doc #12) at 14. Plaintiff is a high school graduate and her employment history is slight, consisting of six months working as a cashier at a Piggly-Wiggly supermarket and a total of eleven months as a Certified Nursing Assistant ("CNA") in Arkansas for three different employers over the course of eighteen months. AR at 75, 95, 333-34. She moved to California from Arkansas in August of 2003. AR 309. She did not work at all following her move to California, but did give birth to a child who was two years old at the time of the hearing before the ALJ. AR 307.

According to plaintiff's testimony, she first experienced pain in her lower back when she was a teenager and subsequently "tore [her] knee" while working as a CNA, but did not begin experiencing pain in her knee until after she moved to California. AR 309-13. Plaintiff also testified that she first began seeing a psychiatrist for her alleged depression two months before the hearing, around May of 2006. AR 318-19.

The earliest medical records are those from Summit Medical Center between November 2003 and May 2004, when plaintiff sought emergency room services five times for various complaints, especially lower back pain and various post-partum issues. AR 146-75. Each of these visits resulted in a prescription being issued for Vicodin or for Tylenol with Codeine, both strong, narcotic- and

2

acetaminophen-based pain relievers, sometimes in tandem with muscle relaxants. AR 152, 157, 160, 168, 173. Several of these records refer to plaintiff having a "history of scoliosis," e g AR 173.

Then, between June 9, 2004, and January 10, 2006, plaintiff visited the office of her treating physician Dr Tolbert Small at least eighteen times. AR 191-231. During these visits she complained of a host of infirmities including lumbar back pain, leg pain, knee pain, shoulder pain, a foot problem, inability to walk or stand long, migraines, difficulty sleeping and depression. AR 191, 193, 203, 219, 222. In treating plaintiff, Dr Small and his assistant, Candace Byers, referred her to physical therapy but she did not follow through and apparently never visited a physical therapist. AR 17. Dr Small also provided plaintiff with shoe inserts to be placed under her feet for comfort, which plaintiff testified were not helpful and that she only used occasionally. AR 317-18. In addition, Dr Small prescribed a variety of medications; in her most recent Disability Report, plaintiff reported taking Advair and Albuterol for her asthma conditions and Roloaxin (a muscle relaxant) and Vicodin. AR 116. Although plaintiff requested "stronger Vicodin" and told her physician that the Vicodin was "not helpful," her Vicodin prescriptions appear to have been refilled routinely throughout the treating relationship. AR 192, 200, 203, 209, 211, 212, 215, 217.

Attempting to locate a clinical basis for plaintiff's complaints, physicians ordered several magnetic resonance imaging (MRI) exams of plaintiff's knee and spine. All of these were essentially normal. AR 145, 176, 177, 232. For example,

\\

3

radiologist Jeffrey L Black wrote under "impression" simply "Normal left knee."  AR 145.

B

On August 19, 2004, plaintiff filed an application for DIB (her second) and for SSI (her sixth) alleging a disability onset date of July 1, 2003 due to "scoliosis and arthritis in her entire left side."  AR 13-14.  The SSA denied these applications initially and on reconsideration.  AR 24-32, 34-39.  Plaintiff filed a timely request for hearing on March 24, 2005.  AR 40.  For reasons unclear from the record, the hearing did not take place until July 17, 2006.  AR 300.

At the hearing, plaintiff, who appeared with her attorney, testified that although she was responsible for caring for her healthy, two-year-old daughter nine hours per day while her husband was at work, she did not take her out for walks or do much with her, nor did she do laundry or housekeeping because of her pain and depression:  "I just can't motivate myself to get up and do anything."  AR 314-25.  A vocational expert also gave testimony not relevant to this appeal.

The ALJ specifically considered the following physicians' reports: (1) consultative examination reports ordered in connection with plaintiff's application for social security benefits from three examining physicians (AR 133-38, 141-43); (2) a medical source statement and residual functional capacity ("RFC") questionnaires from treating physician Dr Small (AR 139-40, 178-83, 184-86, 187-90); and (3) an assessment and RFC questionnaire from plaintiff's treating psychiatrist, Dr Theodore Pait (AR 271-84).

Dr Rajeswari Kumar, an orthopedist and diplomate in both physical and rehabilitative medicine and in pain medicine, examined plaintiff in March 2004.  AR 133-36.  He observed that, while plaintiff reported "constant pain * * * aggravated with sitting, standing, walking half a block, bending or lifting," the clinical exam findings were normal:

> On physical exam, [plaintiff] was able to walk without any assistive device in the examining room.  The cervical spine range of motion is normal.  Lumbar spine range of motion is minimally restricted.  There is no paraspinal muscle spasm or tenderness.  There is no clinical evidence of radiculopathy.  No evidence of scoliosis on clinical exam.  Rest of the upper and lower extremities does not reveal any joint pathology.  There is no neurological deficit.

AR 136.  Under "functional limitations," Dr Kumar wrote simply: "[t]he patient has multiple subjective complaints, but there are no objective findings."  Id.

Dr Donald Townsend, a specialist in orthopedic surgery and pediatric orthopedics, saw plaintiff on June 17, 2004.  AR 138.  He noted that plaintiff's left hemipelvis was 2cm shorter than the right, found restricted range of motion of her "back to forward flexion, right and left lateral bending and rotation" and noted "some tenderness over the right sacroiliac joint."  He noted, however, "no curvature of the spine," "[n]o evidence of scoliosis," "alignment of the vertebra was * * * normal," and "normal motor and sensory findings."  He referred plaintiff to physical therapy for back and postural exercise.  AR 138.

Dr Amit Rajguru, a board-certified internal medicine physician, saw plaintiff on November 9, 2004.  His report commented on plaintiff's "very slow gait" and her difficultly mounting and dismounting from the examination table and noted "a history of left

arm numbness" and clinical findings of decreased sensation in the left arm. AR 141-42. In sharp contrast with the first two physicians, Dr Rajguru wrote under "medical history" that "[plaintiff had] been diagnosed with scoliosis of her thoracolumbar spine region" and found her back on physical examination "notable for moderate amount of scoliosis in the thoracic and lumbar spine areas [and] decreased range of motion of the lumbar spine."

Dr Small completed two RFC questionnaires for plaintiff on February 10, 2005 and October 25, 2005, respectively. AR 178-90. In the former, Dr Small identified three "positive objective signs" of weakened physical capacity, including reduced grip strength in the left hand, tenderness and a "mild dextoscoliosis," stated that plaintiff was depressed due to pain associated with these conditions and wrote that plaintiff was "[i]ncapable of even 'low stress' jobs," due to "difficulty handling stress in [her] current life" and that she "'goes off' frequently, [and is] easily 'fed up' and frustrated." AR 179-80. Dr Small also opined that plaintiff could walk only half a block without rest or severe pain and could sit or stand for less than two hours. AR 181. In the later RFC assessment, Dr Small wrote that plaintiff could sit for 30 minutes "max," would not be able to "tolerate duty environments," would be "unable to sustain focused attention," and, due to "frequent periods of social withdrawal," could not adapt to work or work-like situations. AR 184-86.

Dr Small's practice also completed a mental RFC questionnaire dated November 23, 2005 and addressed to the SSA. AR 187-90. This report, bearing an illegible signature, diagnosed plaintiff with depression and checked boxes indicating plaintiff's

6

"mental abilities and aptitude needed to do unskilled work" to be "poor or none" (the lowest of four choices) in twelve of sixteen categories and "fair" in the remaining four. AR 187-88. It repeated that plaintiff "'goes off' frequently,' [and is] [e]asily fed up and frustrated. Difficulty finishing household tasks, sometimes can't get out of bed. Social withdrawal." AR 188. The report marked plaintiff similarly unfit for "semiskilled or skilled work" and "particular types of jobs" and checked the box indicating plaintiff would be absent from work "more than three times a month"——the most generous of six choices. AR 189-90.

Plaintiff's treating psychiatrist, Dr Pait, completed an "initial assessment form" and a mental RFC questionnaire. AR 276-84. In the initial assessment form dated April 25, 2006, Dr Pait noted that plaintiff had been depressed for over a year according to plaintiff's primary physician and noted plaintiff's symptoms to include decreased energy, irritability and social withdrawal. He noted that plaintiff denied being anxious, feeling hopeless or helpless or having hallucinations, delusions or suicidal thoughts. In the field regarding mental health services, however, Dr Pait checked a box indicating that plaintiff displays "psychotic symptoms or suicidal idea/acts" and that she was unable to establish and maintain social support systems. AR 280. Regarding functional limitations, Dr Pait checked boxes indicating "marked" limitations in the areas of daily activities, social functioning, concentration, persistence "of place" [sic] and episodes of decompensation. Dr Pait noted plaintiff's current medications to be Vicodin, Midrin, Naprosyn, Robaxin, Elavil, Prilosec and albuterol, marked "no" for all categories of substance abuse on the

7

1 form (prescription drugs were not included on this list) and
2 recommended discontinuing Paxil (which was not among those he had
3 listed as plaintiff's "current" medications) and starting Efflexor
4 for depression. AR 280.

5 Dr Pait completed the same mental RFC form as Dr Small,
6 discussed above. AR 282-84. He marked "mental abilities or
7 aptitude needed to do unskilled work" to be "poor or none" in ten
8 of the sixteen categories and "fair" in the rest. With respect to
9 medical or clinical findings to support his assessment, Dr Pait
10 wrote, "chronic pain from scoliosis limits most categories above
11 the pain is severe and unpredictable [sic]." He too checked the
12 "more than three times a month" box to indicate that he considered
13 frequent absences from work likely.

14 On October 27, 2006, the ALJ issued an opinion
15 determining that plaintiff had failed to demonstrate <u>any</u>
16 impairment, much less the "severe impairment" a claimant must show
17 to pass step two of the five-step analysis. At the conclusion of
18 his discussion, the ALJ wrote the following blunt summary of his
19 analysis:

> [t]he claimant's medical records contain no objective
> abnormal evidence that would support a finding that
> she suffers from an "impairment," whether physical or
> mental. The opinions of the claimant's treating
> doctors and Dr Rajguru do not compensate for this
> lack, since they are demonstrably unreliable. Yet,
> even if I could make a finding that the claimant's
> back pain or depression was an "impairment," as
> defined above, I would not be able to find that it is
> "severe." The claimant's statements that her pain
> prevents her from performing all work are undercut by
> her lack of work history and her failure to comply
> with treatments prescribed to improve this pain. And
> the opinions of the claimant's various doctors that
> her back pain and depression both markedly impair her
> functioning are not supportable, due to their lack of
> expertise to render such opinions, and the complete

8

        lack of evidence to support them.  There are a lot of complaints in these records, but there is not much more than that.

AR 19.

The ALJ found Dr Rajguru's pain assessment based on plaintiff's alleged scoliosis unreliable in light of Dr Kumar's specific finding that there was no evidence of scoliosis.  AR 16. Noting that "[a] claimant either has scoliosis or she does not," the ALJ weighed Dr Kumar's opinion more heavily than that of Dr Rajguru because Dr Kumar was a specialist in orthopedics while Dr Rajguru was not.  Id.

With respect to the assessments of other doctors, including Dr Small, who had found plaintiff unable to perform all work, the ALJ discounted these because they were "not supported by the evidence."  Regarding Dr Small's report, the ALJ noted the great discrepancy between the quite minor objective medical findings on the one hand and the extent of limitations marked on the form on the other.  AR 16-17.  For example, he had "a hard time accepting" that a claimant with only "'moderately' tender inferior paralumbars could not lift 10 pounds or more or stand and/or walk no more than 2 hours in 8" per Dr Small.  AR 17.

The ALJ discounted Dr Pait's opinion in its entirety based on its internal inconsistencies, noting that Dr Pait's indication of "marked" functional limitations on plaintiff's ability to perform daily and work-related activities was inconsistent with the observation that plaintiff's mood was "okay" and her linear thought process fully oriented.  AR 18.  Further, he noted that Dr Pait had given inconsistent indications regarding suicidal tendencies and stated "due to obvious contradictions * * *

9

between those findings and Dr Pait's opinion as to their impact on the claimant's functioning, I find him to be a completely unreliable source." AR 18-19.

The ALJ also found fault with Dr Pait and Dr Small for issuing opinions outside the scope of their expertise. AR 18. Dr Small's issuance of an opinion on plaintiff's mental capabilities, which were outside his scope of expertise as a physician, contributed to the ALJ's decision to discount his opinion. AR 18. Similarly, the ALJ characterized Dr Pait's RFC opinion, which rested entirely on an unsubstantiated finding of "chronic pain from scoliosis" as a "regurgitation of the claimant's unsubstantiated descriptions of her pain." AR 18.

As for plaintiff's credibility, the ALJ commented on long gaps in medical treatment, including a four-month gap right after the alleged onset date (AR 16), on plaintiff's failure to follow through on referrals to physical therapy for back pain and her legally insufficient excuses therefor, and on the fact that plaintiff's physicians prescribed no other treatments commonly employed for back pain, such as a TENS unit, a home exercise program, chiropractic or acupuncture care. AR 17. In addition, the ALJ commented that plaintiff's sparse work history undercut her claim that she would work but for disabling pain: "from what I can tell, the claimant has never performed [substantial gainful activity], even in the years prior to her alleged disability." Id.

Plaintiff timely filed this action seeking judicial review of the SSA's action.

\\

\\

10

**II**

The court must uphold the SSA's decision to deny benefits if it is supported by substantial evidence and is not based on legal error. Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F3d at 1039. If evidence exists to support more than one rational interpretation, the court must defer to the SSA's decision. Morgan v Commissioner of the Social Security Administration, 169 F3d 595, 599 (9th Cir 1999). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. Andrews, 53 Fd at 1029.

To establish eligibility for social security benefits, the claimant has the burden of proving an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which * * * has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC §423(d)(1)(A). An "impairment" under the regulations refers to anatomical, physiological or psychological abnormalities indicated by "signs, symptoms, or laboratory findings" elicited by medically acceptable clinical and laboratory diagnostic techniques. 20 CFR §404.1508; §416.908.

The social security regulations set forth a five-step sequential evaluation process for determining whether a claimant has met his or her burden. 20 CFR §404.1520. Relevant to this appeal are the first two of these steps. First, the ALJ must determine whether the claimant is engaged in substantial gainful

11

activity. 20 CFR §404.1520(b), § 416.920(b). If not, the second step examines whether the claimant's impairments are "severe" within the meaning of the regulations. 20 CFR §404.1520(c), § 416.920(b). If the impairments are determined to be "severe," the ALJ then follows the remaining steps to determine whether the severe impairments may be disabling.

Of special relevance to this case, §404.1528 (§416.928) states that the claimant's "statements alone are not enough to establish that there is a physical or mental impairment." Rather, "signs," defined as "anatomical, physiological, or psychological abnormalities which can be observed * * * [and] must be shown by medically acceptable clinical diagnostic techniques" and "laboratory findings" produced by "medically acceptable laboratory diagnostic techniques" are also required. See also §404.1529 (§416.929)(evaluation of symptoms requires medically determinable impairment established by medical signs or laboratory findings).

On appeal, plaintiff contends that the ALJ's determination that plaintiff does not have a severe impairment is not supported by substantial evidence. Doc #15 at 10. Specifically, plaintiff challenges the ALJ's decision to give little or no evidentiary weight to the opinions of Dr Small, Dr Pait and Dr Rajguru and to discount plaintiff's subjective pain testimony. Doc #15 at 9, 10.

A

Plaintiff first alleges that the ALJ improperly discounted the opinions of treating physicians Small and Pait and examining physician Rajguru. Doc #15 at 5-9. For the reasons

12

stated, the court finds that the ALJ's handling of these opinions was in accordance with the applicable legal principles and supported by substantial evidence.

In this circuit, cases distinguish among the opinions of three types of physicians: (1) treating physician; (2) non-treating examining physician; and (3) those who neither examine nor treat the claimant. <u>Lester v Chater</u>, 81 F3d 821, 830 (9th Cir 1995). Generally, more weight is given to the opinion of a treating source than a non-treating source because the former is deemed likely to be the "medical professional most able to provide a detailed, longitudinal picture of the claimant's impairment." 20 CFR §404.1527(d)(2), 416.927(d)(2). A treating physician's opinion is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. <u>Tonapetyan v Halter</u>, 242 F3d 1144, 1149 (9th Cir 2001). Indeed, the regulations specifically reserve to the SSA the determination that an individual is disabled. 20 CFR § 404.1527(e), 416.927(e).

In cases in which the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing reasons." <u>Lester</u>, 81 F3d at 830. If the treating doctor's opinion is contradicted by another medical opinion, the ALJ may not disregard the former opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id.

With respect to Dr Small, plaintiff contends, first, that the ALJ failed to provide a legitimate reason for not giving Dr Small's opinion controlling weight as the opinion of a treating physician. Doc #15 at 6. In this case, at least two doctors

13

contradicted Dr Small's conclusion of plaintiff's incapacity to engage in daily and work-related activities due to the pain related to her "mild dextoscoliosis," tenderness and reduced grip strength on her left hand. AR 178-79. Drs Kumar and Townsend, both specialists in the relevant field, found no evidence of scoliosis based on their examinations of plaintiff's spine. AR 136 (noting no evidence of scoliosis on clinical exam); 138 (noting that the inspection of her thoracolumbar spine showed no evidence of a curvature and hence no evidence of scoliosis). Dr Kumar also opined that plaintiff had no muscle tenderness. AR 136. Consequently, the ALJ required "specific and legitimate reasons" for discounting Dr Small's opinion.

       The ALJ adequately explained his decision to discount Dr Small's views as noted herein and his reasons for doing so were legitimate: lack of measurable findings on diagnostic tests such as MRI, contradictory findings by two specialists and internal inconsistencies in Dr Small's own reports.

       As a further argument, plaintiff contends––without citation to authority––that the ALJ erred in failing to discuss all of the six factors listed in 20 CFR §404.1527 (§416.927(d)), such as length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship and so on, in determining what weight to give his opinion. Doc #15 at 7. This argument lacks merit. The applicable standard for a district court's review of an ALJ's decision to reject the opinion of a treating physician that is in conflict with that of an examining physician is whether he has set forth "specific and legitimate reasons supported by substantial evidence in the record for doing

14

so. Tonapetyan, 242 F3d at 1148. There is no requirement that the ALJ treat § 404.1527(d) as a sort of checklist. In any event, it is unclear how a more ample discussion of factors could have rescued Dr Small's opinion in light of the lack of medical signs and laboratory findings to support it.

Plaintiff next argues that the ALJ erred in discounting the opinion of Dr Pait. Doc #15 at 7, 8; Doc #20 at 3. Plaintiff urges that it was proper for Dr Pait to opine about "stressor[s]" affecting a patient's mental state notwithstanding his unfamiliarity with the true facts of plaintiff's physical condition. Doc #20 at 3. This argument fails to bolster Dr Pait's opinion. Dr Pait's assessment failed to indicate <u>any</u> medical or clinical findings of his own to substantiate his assessment of plaintiff's mental abilities and aptitude. AR 282. For reasons unknown, plaintiff falsely informed Dr Pait that she suffered from painful scoliosis (AR 282-83) and Dr Pait appears to have accepted this as true. The ALJ need not accept opinions of psychiatrists who merely echo the claimant's self-reported symptoms——especially false ones——without indication as to how they "translate into specific functional deficits which preclude work activity." Morgan, 169 F3d at 601; see also Bayliss v Barnhart, 427 F3d 1211, 1217 (9th Cir 2005)(affirming ALJ's rejection of a psychological assessment that was not based on review of objective medical data or reports). Moreover, the internal inconsistencies noted in the discussion herein constitute further substantial evidence supporting the ALJ's decision to give little weight to Dr Pait's opinion. See Morgan, 169 F3d at 601-03.

\\

15

Plaintiff also argues that the ALJ erred in failing to discuss some of the six factors in 20 CFR §404.1527(d) with respect to Dr Pait.  As noted previously, § 404.1527(d) is not a checklist. So long as substantial evidence supports the ALJ's handling of a medical opinion under the proper legal standard, as is the case here, the district court is required to uphold it.  In any event, among the omitted factors was "length of the treatment relationship," yet plaintiff began mental health treatment only two months the hearing and Dr Pait completed the reports at issue early in the treatment relationship, so this factor does not add weight to those reports.  AR 280, 284, 319.

Plaintiff argues that the ALJ erred in giving more weight to the opinion of one examining physician——Dr Kumar ——over the other——Dr Rajguru.  Doc #15 at 5.  But the ALJ did so because Dr Kumar was a specialist in the area of orthopedics while Dr Rajguru was an internist, something that is specifically provided for under 20 CFR §404.1527(d)(5) (§416.927(d)(5)): "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  Furthermore, Dr Kumar's opinion that, based on his clinical examination, plaintiff did not suffer from scoliosis (AR 136) was in accord with the opinion of another specialist, Dr Townsend, as well as two MRI examinations of plaintiff's spine.  AR 138, 177, 232.

In her reply, plaintiff suggests that Dr Townsend's finding that plaintiff's left hemipelvis was 2cm shorter than her right and his referral to physical therapy (AR 138) somehow buttresses the opinions of Drs Small and Rajguru.  Doc # 20 at 2.

16

Dr Townsend's brief report, however, did not even suggest that the pelvis finding could explain plaintiff's alleged chronic back pain. This argument is therefore unavailing.

### B

Plaintiff next argues that the ALJ improperly discounted plaintiff's pain testimony. Doc #15 at 9, 10; Doc #20 at 4-5. In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis. Smolen v Chater, 80 F3d 1273, 1281 (9th Cir 1996). First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments that "could reasonably be expected to produce pain or other symptoms alleged." Smolen, 80 F3d at 1281-82. Once the claimant has done so, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F3d at 1281.

In this case, the ALJ determined that plaintiff had failed to meet the threshold standard of showing an "impairment" because the records "contain nothing more than her own complaints of back pain." AR 16. Substantial evidence in the record as detailed herein supports this determination. Therefore, the ALJ was not required to proceed to the second step of the analysis. Even though it was not required, however, the ALJ's decision contained clear and convincing reasons for rejecting plaintiff's pain testimony.

First, the ALJ noted that plaintiff had failed to follow up on physical therapy referrals. AR 16. In response, plaintiff

17

relies on Nguyen v Chater, 100 F3d 1462 (9th Cir 1989). Doc #15 at 10.  In Nguyen, the ALJ had doubted the severity of the claimant's affective disorder based on his failure to pursue mental health treatment.  Nguyen, 100 F3d at 1465.  Noting the widespread underreporting of depression and that those afflicted may not recognize the gravity of their mental illness, the Ninth Circuit in Nguyen noted that is "is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  100 F3d at 1465.  Nguyen, however, is inapposite.  Here, the claimant failed to pursue physical therapy for alleged back pain so severe that she could "hardly walk" or spend more than five minutes on the computer.  AR 311, 317.  Moreover, as the ALJ noted, other treatments typically prescribed for back pain were not even discussed in the medical records.  AR 17.  The ALJ, therefore, was permitted to discount plaintiff's subjective pain testimony.  See Johnson v Shalala, 60 F3d 1428, 1434 (9th Cir 1995) (affirming ALJ's discounting of claimant's subjective pain testimony due to a lack of medical treatment for alleged debilitating back pain).

Second, the ALJ discredited plaintiff's testimony due to her lack of work history, expressing doubt that plaintiff would work even if she could.  AR 17.  The ALJ is permitted to rely on the claimant's work history in making a credibility determination. Thomas v Barnhart, 278 F3d 947, 958 (9th Cir 2002).  Thomas held that the ALJ may discredit the claimant's subjective complaints based on his or her spotty work history or little propensity to work.  278 F3d at 959.  Plaintiff's work history as detailed herein
\\

18

was indeed "spotty" and was properly considered by the ALJ in connection with his credibility determination.

Accordingly, the ALJ's adverse credibility determination regarding plaintiff's subjective pain testimony is supported by substantial evidence in the record.

III

For the reasons stated herein, the court GRANTS defendant's motion for summary judgment (Doc #16) and DENIES plaintiff's motion for summary judgment (Doc #15). The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

_____
**VAUGHN R WALKER**
**United States District Chief Judge**